## CIRCUIT COURT OF FAIRFAX COUNTY

Merrifield Industrial Corp.

v.

Computer Sciences Corp.

October 24, 1988

Case No. (Law) 81735

By JUDGE WILLIAM G. PLUMMER

First, I will face the issues concerning rent, then damages to premises, attorneys' fees and costs, and, finally, the stipulated "pass-throughs."

After the terms stated in the leases had run, CSC claims it had the right to holdover at the last monthly rental rate in accord with Paragraph 26. Under this theory CSC could stay at that rental rate until it voluntarily vacated or was evicted, no matter how long the period of time.

The provisions of Paragraph 26 hinge on two conditions being met: (1) the tenant elects to remain in possession, and (2) the landlord suffers it to remain. Clearly, Defendant's failure to vacate demonstrates its election to remain. However, the second condition necessary to trigger the Paragraph 26 rent provision has not been met. Plaintiff's letter of October 31, 1981, instructed Defendant to vacate or remain at a higher rent. This constitutes a valid termination notice. Defendant claims the letter was insufficient as a termination notice because it made an "assumption" instead of utilizing the phrase "notice to vacate." Hyper-technical drafting requirements are not mandated for termination notices. *See* 50 Am. Jur. 2d *Landlord and Tenant* Section 1206 (1970) (notice must be

so certain that it cannot be reasonably misunderstood; notice must say with certainty the date on which the lease is to terminate; notice may be framed in the alternative, *i.e.*, pay arrearage or quit). The meaning of the letter was plain -- landlord chooses not to suffer tenant to remain under the original lease terms. Since the condition was not met, the rent provision in Paragraph 26 did not come into effect.

Defendant characterizes Plaintiff's demand for increased rent as an attempt to unilaterally modify express terms of the lease. This is not so. As of December 31, 1981, the lease expired by its own terms. Defendant failed to renew, and Plaintiff elected not to suffer the tenant to remain pursuant to Paragraph 26. There is nothing left to modify.

Since Defendant continued to remain in possession after being instructed to vacate at the end of its term, the parties entered into a common law holdover relationship instead of the one bargained for in the least. So the next question becomes can the landlord increase rent for a holdover tenant? Plaintiff represents (and I agree) that there are no Virginia cases on the subject. Other jurisdictions say that if a tenant receives notice for increased rent and continues in possession without protest, then he has acquiesced to pay the new rent. *See* Annot., 109 A.L.R. 197, 201. Under our facts, however, the tenant has objected to the new rent by their December 3, 1981, letter. The jurisdictions are split as to what happens if the tenant objects. Half say that the holdover tenant becomes liable for the increase, notwithstanding his refusal to agree. *Id.* at 203. The other half state that the tenant is not liable if he expresses his objections within a proper time. *Id.* at 205. Evidently, the reasoning for this position is that the landlord has it within his power to begin eviction proceedings. It was his election to suffer the tenant to remain or to evict. Under the latter theory, when faced with nonassent to increased rent, the onus to act should be on the landlord, and the law will not subject the tenant to terms which he adamantly refused.

Cases supporting the former view focus on the tenant's actions (*i.e.*, remaining on the property) rather than his words. The act of holding over renders the tenant liable for the new amount despite his protest.

Plaintiff presents a persuasive argument for concluding that if faced with the issue, the Virginia Supreme Court would choose the view holding tenants liable for increased rent. In *Grice v. Todd*, 120 Va. 481 (1917), the Court emphasized the "implied agreement" which the "act" of holding over creates. The Court goes on to say that the implied agreement is created not only in the *absence of an intention* to do so, but even when a contrary intent has been expressed. *Id.* at 486. This indicates that the court would put more weight on the holdover tenant's actions than on his words.

CSC is liable for both increases with interest on each increment from the time due until paid, omitting the period barred by the statute of limitations.

A full review of the claim for damages in excess of normal wear and tear leads the Court to find for CSC on that claim, in most respects.

The evidence was general in nature to a large extent with an absence of foundation evidence as to the conditions at the beginning of the leases. Many of the items claimed to have been damaged had depreciated over the years so as to have no residual value.

Plaintiff shall recover $8,000 to do the wiring on the second level to get the various areas tied into the appropriate panels.

Judgment is also granted on the "pass-throughs" as stipulated in the amount of $17,045.99.

Finally, Plaintiff shall have judgment for its attorneys' fees and expenses in pursuing this litigation in accord with Paragraph 31. The Court finds the amount claimed is both reasonable and necessary.

CSC should be given credit for the security deposit of $27,157.